**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Darwin Rusty SIERS,**
**Defendant–Appellant.**

**No. 88–5807.**

United States Court of Appeals,
Fourth Circuit.

Argued Jan. 13, 1989.

Decided May 5, 1989.

---

Orville Leroy Hardman for defendant-appellant.

Ruth Lynette Ranson, Asst. U.S. Atty. (Michael W. Carey, U.S. Atty., on brief), for plaintiff-appellee.

Before WIDENER and CHAPMAN, Circuit Judges, and HENDERSON, United States District Judge, District of South Carolina, sitting by designation.

WIDENER, Circuit Judge:

Darwin Rusty Siers was convicted of violating 18 U.S.C. §§ 111 and 1114 for assaulting and attempting to kill a United States Postal Service employee. On appeal, Siers challenges the government's cross examination method and argues that counts one and five are multiplicious. We find that counts one and five are not multiplicious. Although certain of the government's cross examination was improper, we hold that the error is not reversible, and affirm.

The five count indictment returned against Siers charged that Siers "did forcibly assault, resist, oppose, impede, intimidate, and interfere" with a U.S. Postal employee, James Hedrick, while Hedrick was engaging in his official duties on December 8, 1986, December 24, 1986, May 4, 1987 and July 9, 1987. It also charged Siers with attempting to kill James Hedrick on July 9, 1987.

At trial, Hedrick testified that Siers, on December 8, 1986, approached him while he was delivering mail and threatened to kill him if he did not stay away from Siers' wife and children.[1] Hedrick also testified that on December 24, 1986 Siers followed him on his mail route and later pointed a shotgun at him and kept it aimed at him as he drove down the road. Hedrick further testified that on May 4, 1987 Siers approached him while he was on his mail route and said that if any harm came to the Siers children that he would hurt Hedrick and then pulled a pistol out and pointed it at Hedrick. Hedrick testified that on July 9, 1987 Siers pulled up to where Hedrick had stopped for lunch and fired a shotgun at him twice. The second shot hit Hedrick. Siers denied that he even saw Hedrick on December 8, 1986 and December 24, 1986. Siers testified that he saw Hedrick on May 4, 1987 but that he only spoke to him about getting a gas leak fixed in the house where Hedrick and Siers' children resided. Siers admitted shooting Hedrick on July 9, 1987

1. Much of the difficulty between Hedrick and Siers apparently flows from the fact that Siers' wife and Hedrick began living together on December 4, 1986. Mrs. Siers testified, however, apparently without contradiction, that she and Hedrick did not take up together until after her separation from Siers and after her divorce case had commenced.

but claimed that Hedrick was trying to run over him with a truck.

Siers called fourteen character witnesses who each testified that Siers had a good reputation in the community for being peaceful and law abiding. The government cross examined each of the character witnesses by asking about specific instances of bad conduct on the part of Siers with reference to wife beating. The government asked two of the character witnesses hypothetical questions, assuming that Siers was guilty of the crime he was charged with committing.

█ The fourteen character witnesses each testified that Siers' reputation in the community for being peaceful and law abiding was good or very good. During cross examination, the government, instead of asking if the character witness had heard of or knew of a specific instance of bad conduct, would ask if the witness' opinion would be changed if Siers had engaged in specific instances of bad conduct with respect to wife beating. If a witness hedged his answer, the government would go a step further and tell the witness to assume for a fact that Siers engaged in the bad conduct. At trial, Siers did not object to the government's repeated questioning along these lines and therefore should be prevented from raising the issue as error.[2] *Ray v. United States*, 255 F.2d 473, 475 (4th Cir.1958). In any event, what well may have been a tactical choice does not rise to the level of plain error.

This is not to say that the form of questioning by the government is either approved or condoned; it is just that we must decide the case in the factual context in which it is presented to us. In *United States v. Hewitt*, 663 F.2d 1381 (11th Cir. 1981), the court decided that just such questioning was highly improper. In that case, the court set out the permissible inquiry on such cross examination of a character witness as whether the witness has heard of a fact that is likely to have caused a negative community impression of the

defendant. If the witness has not heard of the fact, that is the end of the inquiry, and asking the witness to assume the fact simply has no place in the case. See Wright and Graham, FEDERAL PRACTICE AND PROCEDURE (1978) § 5268; Torcia, WHARTON'S CRIMINAL EVIDENCE (1972), § 426; Weinstein & Berger, WEINSTEIN'S EVIDENCE (1988), ¶ 405[02].

█ Additionally, Siers challenges the government's questions on cross examination of two of Siers' character witnesses which questions assumed that Siers was guilty of the very offense for which he was on trial. For example, the government asked the character witness Kersy the following: Well would it change your opinion to him being a peaceful person if he shot an individual and wounded them with a sawed-off shotgun?

Such questions have been disapproved by, apparently, every court which has considered them, and we agree. *United States v. Candelaria–Gonzalez*, 547 F.2d 291, 294 (5th Cir.1977); *United States v. Polsinelli*, 649 F.2d 793 (10th Cir.1981); *United States v. Williams*, 738 F.2d 172 (7th Cir.1984); *United States v. Morgan*, 554 F.2d 31, 34 (2nd Cir.1977), *cert. denied* 434 U.S. 965, 98 S.Ct. 504, 54 L.Ed.2d 450 (1977) (in dictum disapproving such questioning of non-expert witnesses). We further agree that the "questions put have no place in a criminal trial." *United States v. Candelaria–Gonzalez*, 547 F.2d 291, 294 (5th Cir.1977).

█ As with the case of the government's cross examination of the character witnesses with respect to wife beating, the cross examination of two of those witnesses, by putting to them a hypothetical fact situation corresponding to the crime for which Siers was being tried, is error, and, again, we neither condone nor excuse the same. If such errors or defects, however, do not affect the substantial rights of the parties, we must not reverse. 28 U.S.C. § 2111. In view of the fact that the dis-

---

**2.** The government apparently had ample evidence which tended to show that Siers was a wife beater.

trict court was quite lenient in permitting Siers to call 14 character witnesses, and the fact that 12 of them were examined without objection and all of them stated that in their opinion Siers had a good reputation as a peaceful and law abiding citizen, we do not believe that the cross examination of the other two character witnesses, however improper it may have been, and we emphasize that it was improper, affected the substantial rights of the parties. We thus are of opinion the questioning was harmless under 28 U.S.C. § 2111.

We call attention, however, to the fact that the factual setting of this case is most unusual. It will be a rare case in which objection is not made and a rare case in which 14 character witnesses are called instead of the more usual five. Thus, we invite the attention of the district courts and the bar to the fact that the government frequently will not be in such luck as to be able successfully to claim harmless error for cross examination of character witnesses in the manner engaged in by the government in this case.

Siers also challenges the district court's submission to the jury of count one and count five, arguing that they are multiplicious. Count one of the indictment charges Siers with violating 18 U.S.C. § 111 by forcibly assaulting James Hedrick with a deadly weapon on July 9, 1987. Count five of the indictment charges Siers with violating 18 U.S.C. § 1114 by attempting to kill James Hedrick on July 9, 1987. While it is true that both charges are based on the same shooting incident, the Supreme Court has approved conviction of two offenses based on the same act as long as each offense requires proof of a different element. *Blockburger v. United States,* 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932). To convict under 18 U.S.C. § 1114 one must prove an attempt to kill one of the listed officials which includes postal employees. To convict under 18 U.S.C. § 111 one must prove that the defendant forcibly assaulted, resisted, opposed, impeded, intimidated or interfered one of the officials listed in § 1114 while they are engaged in the performance of their official duties. Since each offense requires a different element of proof, Siers' challenge fails.

The judgment of conviction is

AFFIRMED.