# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

May 19, 2021

Lyle W. Cayce
Clerk

No. 20-50092

United States of America,

*Plaintiff—Appellee*,

*versus*

Bryan Torres,

*Defendant—Appellant*.

Appeal from the United States District Court
for the Western District of Texas
USDC No. 2:15-CR-1212-2

Before Haynes, Graves, and Willett, *Circuit Judges*.
James E. Graves, Jr., *Circuit Judge*:

Bryan Torres was convicted of conspiracy to possess with intent to distribute methamphetamine in violation of 21 U.S.C. § 841(a)(1) & (b)(1)(A) and § 846, for which he was sentenced to 240 months of imprisonment. Torres appeals his conviction and sentence. We conclude that Torres was deprived of his Sixth Amendment right to the assistance of counsel when he was barred from all communication with his attorney during an overnight recess at trial. We REVERSE and REMAND for further proceedings.

No. 20-50092

## I. Background

This case arose from a narcotics trafficking and distribution investigation involving a violent street gang known as the Almighty Latin Kings and Queens Nation ("Latin Kings"). Billy Ramirez was the target of the investigation, and, in June 2014, wiretaps were placed on his phones, providing access to voice and text conversations. Bryan Torres was a member of the Latin Kings, and purportedly a methamphetamine supplier for Ramirez.

In October 2015, Torres and nine co-defendants were charged with conspiracy to possess with intent to distribute methamphetamine in violation of 21 U.S.C. § 841(a)(1) & (b)(1)(A) and § 846. Torres pled not guilty, and trial commenced on March 21, 2017. During the first and second days of trial, the Government presented the testimonies of multiple witnesses who were involved in the conspiracy. On the second day of trial, the last government witness was excused at 7:09 P.M.

Subsequently, defense counsel informed the district court that Torres intended to testify, expressing that it would take "several hours" to complete direct examination. At the court's direction, Torres took the stand at 7:13 P.M. After approximately fifty minutes of direct examination, the trial judge declared an overnight recess and dismissed the jury at 8:03 P.M. The district court issued a sequestration order, and the following exchange occurred:

> Court: All right. Mr. Torres, let me give you some instructions. Now that you are testifying, you are not to speak to anyone about your testimony directly or indirectly. You may not even speak to [counsel], not through your mother, not directly to [counsel], not directly through any other members of the Latin Kings that have been in this courtroom throughout this time. You are to talk to no one about your testimony. Neither take advice, neither talk about it, neither discuss it, neither ask questions, anything of that nature. Am I clear?

No. 20-50092

> Torres: Yes, ma'am.
>
> Court: Okay.
>
> Counsel: I'm not sure, did you just say I cannot talk to my client?
>
> Court: You may not speak to him. Now that he's started his testimony, you may not consult with him anymore, [counsel], period. You cannot [a]ffect his testimony in any way from this point forward until he's finished off the—off the stand. So, no, you may not discuss anything with him at all at this point.
>
> Counsel: Thank you.

Court adjourned at 8:06 P.M. and resumed at 9:42 A.M. the next day. Direct examination continued, and Torres was ultimately excused at 12:17 P.M. on the third day of trial. At the end of the third day, the jury found Torres guilty of conspiracy to possess with intent to distribute methamphetamine.

At sentencing, the district court applied a four-level aggravating role adjustment for Torres' role as an organizer or leader of criminal activity involving more than five participants or that was otherwise extensive under U.S.S.G. § 3B1.1(a). The court imposed a within-Guidelines sentence of 240 months of imprisonment and five years of supervised release. Torres timely appealed.

## II. Legal Analysis

Torres appeals his conviction and sentence on the following grounds: (1) his Sixth Amendment right to counsel was violated when he was barred from speaking with his attorney during an overnight recess; (2) his Sixth Amendment right to confrontation was violated when the district court limited his cross-examination of a government witness; and (3) the aggravating role adjustment was erroneously applied. Because we agree with Torres on the first issue, we do not address his other arguments.

The Sixth Amendment guarantees a criminal defendant the right to the assistance of counsel for his defense. U.S. Const. amend. VI. In *Geders v. United States*, 425 U.S. 80, 91 (1976), the Supreme Court held that an order preventing a testifying defendant from consulting with his counsel "about anything" during a 17-hour overnight recess between his direct and cross-examination violated his Sixth Amendment right to the assistance of counsel. But the Supreme Court narrowed the *Geders* rule in *Perry v. Leeke*, 488 U.S. 272, 284–85 (1989), holding that an order barring consultation with counsel during a short recess between a defendant's direct and cross-examination that only lasted "a few minutes" did not violate the Sixth Amendment.

Here, the district court prohibited Torres from speaking with his counsel during a 13-hour overnight recess declared in the middle of his direct examination, right before the end of the trial the next day. The facts of this case fall squarely within the *Geders* rule; that is, a trial court may not bar a testifying criminal defendant from all communication with his attorney during an overnight recess. *See United States v. Johnson*, 267 F.3d 376, 379 (5th Cir. 2001) (concluding that sequestration orders prohibiting communication between defendant and counsel during an overnight recess and a weekend recess were "indistinguishable from *Geders*"). As the Supreme Court recognized, such a long interruption implicates "the defendant's right to unrestricted access to his lawyer for advice on a variety of trial-related matters that is controlling in the context of a long recess." *Perry*, 488 U.S. at 284 (citing *Geders*, 425 U.S. at 88). Though discussions during an overnight recess "will inevitably include some consideration of the defendant's ongoing testimony," they will encompass "matters that the defendant does have a constitutional right to discuss with his lawyer, such as the availability of other witnesses, trial tactics, or even the possibility of negotiating a plea bargain." *Id*. "[T]he role of counsel is important precisely

because ordinarily a defendant is ill-equipped to understand and deal with the trial process without a lawyer's guidance." *Geders*, 425 U.S. at 88.

Having found a violation, we next consider whether reversal is required, or whether we should conduct plain error analysis. The Government argues that we should review the violation for plain error because defense counsel did not expressly object to the sequestration order at trial. However, we need not decide whether the objection was preserved. Even under plain error review, the *Geders* violation requires reversal here.

To succeed under plain error review, a defendant must show (1) a forfeited error (2) that is clear or obvious, and (3) that affects his substantial rights. *Puckett v. United States*, 556 U.S. 129, 135 (2009). If he makes such a showing, we have the discretion to correct the error, but that discretion should be exercised only if the error seriously affects the fairness, integrity or public reputation of judicial proceedings. *Id.* The Government concedes the first and second prongs, so we only address the third and fourth prongs of the plain error review test.

To affect a defendant's "substantial rights," the error must be "prejudicial," which means that "there must be a reasonable probability that the error affected the outcome of the trial." *United States v. Marcus*, 560 U.S. 258, 262 (2010). Considering both the caselaw and the facts of this case, we conclude that the district court's sequestration order was prejudicial. The Supreme Court has observed that there are "circumstances that are so likely to prejudice the accused that the cost of litigating their effect in a particular case is unjustified." *United States v. Cronic*, 466 U.S. 648, 658 (1984). One "obvious" circumstance is the "complete denial of counsel"; that is, when "the accused is denied counsel at a critical stage of his trial." *Id.* at 659. The Supreme Court and this Circuit have recognized that a defendant who is barred from all communication with his attorney during an overnight recess

is denied the assistance of counsel during a "critical stage" of his trial. *See id.* at n.25; *United States v. Pleitez*, 876 F.3d 150, 158 & n.5 (5th Cir. 2017). The "absence of counsel at critical stages of a defendant's trial undermines the fairness of the proceeding and therefore requires a presumption that the defendant was prejudiced by such deficiency." *Burdine v. Johnson*, 262 F.3d 336, 341 (5th Cir. 2001) (en banc); *see Perry*, 488 U.S. at 278–79 (noting that "a showing of prejudice is not an essential component of a violation of the rule announced in *Geders*"); *Strickland v. Washington*, 466 U.S. 668, 692 (1984) ("Actual or constructive denial of the assistance of counsel altogether is legally presumed to result in prejudice. So are various kinds of state interference with counsel's assistance.").

Having recognized that a *Geders* violation is presumptively prejudicial, we now consider whether the sequestration order actually affected Torres' substantial rights. Here, Torres was barred from all communication with his attorney during an overnight recess. This deprivation of the assistance of counsel affected his substantial rights, especially given that it was the last night before the end of trial. It was the last opportunity to discuss important case-related matters, such as conducting further examination of witnesses, closing arguments, a general recapitulation of how trial was going so far, and even the possibility of negotiating a plea bargain. *See Perry*, 488 U.S. at 284. Indeed, we have difficulty envisioning a scenario in which an overnight ban just before the end of trial of all communication between a defendant and his attorney would not be prejudicial. *See Mickens v. Taylor*, 535 U.S. 162, 166 (2002) ("[W]here assistance of counsel has been denied entirely or during a critical stage of the proceeding . . . the likelihood that the verdict is unreliable is so high that a case-by-case inquiry is unnecessary.") (citing, *inter alia*, *Geders*). We conclude that Torres meets the third prong of plain error review.

Under the fourth prong, we have discretion to correct the error only if it seriously affects the fairness, integrity or public reputation of judicial

proceedings. Though "the fourth prong is not automatic if the other three prongs are met," we must employ discretion "in those circumstances which a miscarriage of justice would otherwise result." *United States v. Escalante-Reyes*, 689 F.3d 415, 425 (5th Cir. 2012) (en banc) (internal quotation marks and citation omitted). We have recognized that "a defendant must have the actual assistance of counsel at every critical stage of a criminal proceeding for the court's reliance on the fairness of that proceeding to be justified." *Burdine*, 262 F.3d at 345. Torres was deprived of the assistance of his attorney during the last overnight recess, and the "absence of counsel at critical stages of a defendant's trial undermines the fairness of the proceeding." *Id.* at 341; *see Johnson*, 267 F.3d at 381 (Barksdale, J., concurring) (stating that under plain error review, conviction should be reversed because banning defendant from communicating with counsel during an overnight recess and a weekend recess was "obvious error that affected his substantial rights (Sixth Amendment assistance of counsel) and the fairness of this proceeding").

We also note that this error could have been avoided. After the last government witness was excused around 7 P.M., defense counsel informed the court that Torres intended to testify and that his direct examination would take "several hours." Rather than declaring the overnight recess then, the court instead directed Torres to take the stand late at night, declared a recess approximately fifty minutes later, and barred any subsequent overnight discussion between Torres and his attorney before the last day of trial. While trials should be expediently adjudicated, and the risk of counsel improperly coaching his client in preparation for cross-examination should be avoided, a criminal defendant is nevertheless entitled to a fair trial. And a fair trial necessarily includes the assistance and guidance of his counsel during an overnight recess. *See Geders*, 425 U.S. at 91 (observing that the conflict between defendant's right to consult with his attorney during an

No. 20-50092

overnight recess and prosecutor's desire to cross-examine defendant without intervention of counsel "must, under the Sixth Amendment, be resolved in favor of the right to the assistance and guidance of counsel"). Thus, we exercise our discretion and conclude that Torres' deprivation of the assistance of his counsel during a critical stage at trial warrants correction under plain error review.

### III. Conclusion

For the foregoing reasons, we REVERSE and REMAND for further proceedings.